**Dick FANNING, Plaintiff and Appellee,**

**v.**

**N. Ruth IVERSEN, Defendant and Appellant.**

**No. 18905.**

Supreme Court of South Dakota.

Considered on Briefs April 27, 1995.

Decided Aug. 9, 1995.

James L. Waggoner, Rapid City, for plaintiff and appellee.

N. Ruth Iversen, Wall, appellant, pro se.

AMUNDSON, Justice.

N. Ruth Iversen (Iversen) appeals the trial court's judgment granting title to real estate and awarding money to Dick Fanning (Fan-

ning). We affirm in part, reverse in part and remand.

## FACTS

Fanning is a rancher who lives near Long Valley, South Dakota. He has a high school education and some vocational training. Iversen is a resident from Wall, South Dakota, who had completed her first year of law school at the University of South Dakota at time of trial.

The parties met at a football game in Wall during September, 1988. At this time, Iversen was employed as a teacher in the Wall School District. Their relationship quickly progressed.

Around October 9, 1988, Fanning submitted an offer to purchase real estate in Custer County, South Dakota, as an investment. Fanning deposited $4,000 earnest money toward the $40,000 purchase price. Although Iversen accompanied Fanning to this real estate sale, the offer to purchase the property was signed solely by Fanning, who also was the exclusive party to pay money in support of the offer.

The seller accepted Fanning's offer, and a closing date was set for November 9, 1988. In the meantime, on October 31, 1988, Fanning purchased an engagement ring to propose marriage to Iversen. Fanning had reason to believe Iversen would accept his proposal as they had discussed marriage. On November 5, 1988, four days before closing, Fanning proposed. Iversen accepted, but the couple refrained from formally announcing their engagement until family could be notified. From that point on, Fanning considered himself engaged.

Due to the forthcoming marriage, Fanning requested the deed to the Custer County property include both his and Iversen's names as tenants in common as single people. The deed was signed on November 9, 1988, and filed the next day. The remainder of the purchase price, $35,093.42, was paid by Fanning at closing, with no financial contribution by Iversen. A warranty deed was signed, delivered and filed with the Custer County Register of Deeds.

On November 15, 1988, Fanning made a loan to Iversen to pay off her personal credit card balance. The terms of the loan were that it was repayable in one year at ten percent. Iversen did not dispute this money constituted a loan, but failed to repay anything. Thereafter, Fanning additionally advanced $10,000 by way of check to Iversen on December 30, 1988, to pay for wedding expenses. Fanning placed the letters "W.L.–F.W. & G." on the check memo, an acronym for "With love, for wedding and gifts." Fanning advised Iversen as to the purpose of this advancement.

Iversen permanently called off the engagement on January 1, 1990. Throughout the next few months, Fanning was hopeful the two would reconcile. The reconciliation did not occur. Nevertheless, Fanning has continued to pay all expenses to maintain the property.

Fanning filed a complaint against Iversen on July 9, 1993, requesting a money judgment and that he be awarded title to the property. A trial was held on July 1 and 8, 1994. The trial court granted Fanning's request, entering judgment plus interest and quieting title in the real estate. Iversen appeals.

## ISSUES

I. DOES EQUITY REQUIRE THAT GIFTS MADE IN CONTEMPLATION OF MARRIAGE BE RETURNED UPON TERMINATION OF THE ENGAGEMENT?

II. IS PREJUDGMENT INTEREST APPROPRIATE ON A SUM OF MONEY LOANED AND/OR ADVANCED IN CONTEMPLATION OF MARRIAGE WHEN THE ENGAGEMENT IS TERMINATED AND, IF SO, ACCRUING FROM WHAT DATE?

III. DID THE TRIAL COURT ERR IN DENYING IVERSEN'S MOTION FOR CONTINUANCE MADE AT THE COMMENCEMENT OF THE TRIAL?

## STANDARD OF REVIEW

Before discussing the merits of the case, it is appropriate to set forth our standard of review. We have held that a trial court's findings of fact will not be disturbed unless they are clearly erroneous. *Knudsen v. Jensen*, 521 N.W.2d 415, 418 (S.D.1994) (citations omitted). Clear error is shown only when, after review of all the evidence, "we are left with a definite and firm conviction that a mistake has been made." *Cordell v. Codington County*, 526 N.W.2d 115, 116 (S.D.1994) (citations omitted). Conclusions of law are reviewed de novo. *Id.*

## DECISION

### I. Conditional Gifts Upon Termination of Engagement.

Iversen argues the trial court erred in quieting title to the Custer County real estate and entering the money judgment. She insists her ownership in that property was not acquired in contemplation of marriage. Iversen further asserts that under SDCL 21–41–1 [1] a quiet title action does not allow adjudication of interests between co-tenants. We do not agree.

This court has held that "although a quiet title action is statutory, SDCL ch. 21–41, it can essentially be an equitable action." *Ahl v. Arnio*, 388 N.W.2d 532, 534 (S.D.1986) (citation omitted). "When the action seeks to determine adverse claims in the property, it is equitable in nature." *Id.* (citation omitted). Reviewing the trial court's findings of fact and conclusions of law, it is obvious the court was properly making an equitable adjudication of the parties' rights and responsibilities in this case. The trial court found that the parties became engaged prior to November 9, 1988. Thus, it concluded that Fanning's financial advancements to Iversen and purported co-ownership of real estate were made in contemplation of marriage.

The majority rule is that a gift made in contemplation of marriage is conditional and should be returned if that condition is not fulfilled. *In re Marriage of Heinzman*, 198 Colo. 36, 596 P.2d 61 (1979); *Piccininni v. Hajus*, 180 Conn. 369, 429 A.2d 886, 888 (1980); *Gill v. Shively*, 320 So.2d 415 (Fl. 1975); *Guffin v. Kelly*, 191 Ga. 880, 14 S.E.2d 50 (1941); *Harris v. Davis*, 139 Ill.App.3d 1046, 94 Ill.Dec. 327, 487 N.E.2d 1204 (1986); *Glass v. Wiltz*, 551 So.2d 32 (La.Ct.App. 1989); *In re Estate of Lowe*, 146 Mich.App. 325, 379 N.W.2d 485 (1985); *Glachman v. Perlen*, 159 A.D.2d 553, 552 N.Y.S.2d 418 (1990); *Wilson v. Dabo*, 10 Ohio App.3d 169, 461 N.E.2d 8 (1983); *McLain v. Gilliam*, 389 S.W.2d 131 (Tex.Civ.App.1965); *Spinnell v. Quigley*, 56 Wash.App. 799, 785 P.2d 1149 (1990); *Bryan v. Lincoln*, 168 W.Va. 556, 285 S.E.2d 152 (1981); *Brown v. Thomas*, 127 Wis.2d 572, 383 N.W.2d 64 (1986). *See generally*, Perovich, "Rights in Respect of Engagement and Courtship Presents when Marriage Does Not Ensue," 46 A.L.R.3d 578; 38 C.J.S. *Gifts* § 61.

In *McLain*, the Texas Court of Appeals stated:

It is generally held that gifts made in contemplation of marriage are subject to

---

1. SDCL 21–41–1 provides:

An action may be maintained by any person or persons having or claiming to have an estate or interest in or lien or encumbrance upon any real property, whether in or out of possession thereof and whether such property is vacant or occupied, against any person or persons claiming an estate or interest in or lien or encumbrance upon the same or any part thereof for the purpose of determining such adverse interest, estate, lien, or encumbrance, and against all persons who appear from the records in the office of the register of deeds, the county treasurer, clerk of courts, or other public records in the county where such land lies to have or ever to have had any estate or interest in or lien or encumbrance upon such real property or any part thereof and against executors, administrators, heirs at law, devisees, legatees, and creditors of any such person or persons who may be deceased, whether such executors, administrators, heirs at law, devisees, legatees, and creditors be known or unknown, and generally against all persons unknown who may have or claim to have any estate or interest in or lien or encumbrance upon such real property or any part thereof for the purpose of quieting the title to such real property and of determining such estate, interest, lien, or encumbrance, and in such action any number of persons may be joined as plaintiffs, whether holding as tenants in common, joint tenants, partners, or in severalty, where the relief demanded in the complaint is common to all of such plaintiffs.

an implied condition that they are to be returned if the donee breaks the engagement, and that the rule applies to real estate as well as personalty; also that in a proper case equity will take jurisdiction to enforce a reconveyance.

*Id.* 389 S.W.2d at 132 (citing *Guffin*, 14 S.E.2d at 54).

In 1991, the South Dakota Legislature abolished SDCL ch. 21–4, providing for actions for breach of promise to marry and seduction. Repealed by 1991 S.D.Sess.L. ch. 181, §§ 1–6 and ch. 155, § 1. Although South Dakota repealed the causes of action altogether, other jurisdictions have passed legislation specifically prohibiting actions for emotional consequences resulting from a broken marital engagement.

There exists a distinction, however, between such "heart-balm" actions and the recovery of conditional gifts. "The most common basis for decision in cases permitting the recovery of, or for property transferred to a betrothed, is that where the transfer was made on the condition that a marriage ensue, the transferor is entitled to its return on nonfulfillment of the condition." *Bryan*, 285 S.E.2d at 154. Fanning is not asking for damages for loss of marriage, or humiliation. Rather, he seeks to assert his equitable common-law right to recover property for which he paid and solely owns because the condition precedent to him gifting an interest to Iversen was not fulfilled. *See Piccininni*, 429 A.2d at 888.

In a similar case, *Aronow v. Silver*, 223 N.J.Super. 344, 349–51, 538 A.2d 851, 854 (1987), the New Jersey Superior Court held that a conditional gift must be returned if the condition is not fulfilled. The parties in *Aronow* purchased a condominium together, intending it to be their future home. They assumed title as tenants in common. No facts indicated that the property was a joint investment or that the breaching party contributed to the purchase price of the condominium. *Id.* 538 A.2d at 855. "The implication that the arrangement was conditioned upon marriage is inescapable." *Id.* The court determined the donor would receive the condominium, along with stocks and stock-proceeds held jointly in anticipation of

marriage. *Id.* 538 A.2d at 856; *see also Heinzman*, 596 P.2d at 61. Ultimately, the controversy became a credibility issue in which the donor prevailed. *Aronow*, 538 A.2d at 855.

Reviewing the record, we cannot say the trial court erred in its credibility ruling that Fanning conveyed co-ownership in the real estate and advanced money to Iversen solely in contemplation of marriage. Iversen provided no financial assistance for the purchase of the real estate, payment of taxes, insurance payments, or the cost to maintain the real estate. Moreover, Fanning's $10,000 check to Iversen had inscribed "with love, for wedding and gifts" on the memo line. Iversen does not dispute Fanning additionally loaned her $3,775 to use as she wished.

The trial court observed the credibility of each of these parties. It found Iversen "totally incredible" in her attempts to explain the transfer of this property other than in conjunction with marriage expectations.

> I find it incredible that an individual would accept a ring as an engagement ring which she has testified [it was] and not have contemplation of marriage involved. That is inconsistent with common knowledge, practice and procedure and normal behavior ... It makes absolutely no sense that one would, a month after one's contact with another person, turn over half of a $40,000 cabin one has just bought unless it is done based upon an emotional attachment and commitment. There is not one shred of evidence to suggest there are any financial issues involved or other issues beyond a personal relationship.

In contrast, the trial court found Fanning credible—his generosity was his only downfall in allowing Iversen such prolonged use of the property after the engagement was broken.

In assessing a similar situation, the court in *Pavlicic v. Vogtsberger*, 136 A.2d 127, 130, 390 Pa. 502, 507 (1957), eloquently concluded:

> A gift given by [one] to [another] on condition that [they] embark on the sea of matrimony ... is no different from a gift based on the condition that the donee sail on any other sea. If, after receiving the

provisional gift, the donee refuses to leave the harbor,—if the anchor of contractual performance sticks in the sands of irresolution and procrastination—the gift must be restored to the donor.

Based on the record, Iversen failed to leave the harbor and the trial court did not err in awarding Fanning the disputed real estate and money.

## II. Prejudgment Interest.

Iversen complains the trial court erred by awarding prejudgment interest. SDCL 21–1–13.1 provides:

Any person who is entitled to recover damages, whether in the principal action or by counterclaim, cross claim or third-party claim, is entitled to recover interest thereon from the day that the loss or damage occurred ... Prejudgment interest is not recoverable on future damages, punitive damages or intangible damages such as pain and suffering, emotional distress, loss of consortium, injury to credit, reputation or financial standing, loss of enjoyment of life or loss of society and companionship. If there is a question of fact as to when the loss or damage occurred, prejudgment interest shall commence on the date specified in the verdict or decision and shall run to, and include, the date of the verdict or, if there is no verdict, the date the judgment is entered ... Prejudgment interest on damages arising from a contract shall be at the contract rate, if so provided in the contract; otherwise, if prejudgment interest is awarded, it shall be at the Category B rate specified in § 54–3–16. The court shall compute and award the interest provided in this section and shall include such interest in the judgment in the same manner as it taxes costs.

South Dakota allows prejudgment interest only when the "exact amount of damages is known or readily ascertainable." *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 112 (S.D.1994). When damages are determined by the trier of fact, it is within the trial court's discretion to make such an award. *Matter of Estate of Smith*, 520 N.W.2d 80, 85 (S.D.1994); *see also Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752 (S.D. 1994).

The trial court held that prejudgment interest was appropriate on the $3,775 loan to Iversen from the date the check was written, November 15, 1988, until the entry of judgment. Iversen does not dispute that this was a "loan," yet argues that prejudgment interest should not be granted because Fanning did not "demand" repayment. This argument is without merit.

Iversen knew exactly how much she agreed to pay for the use of Fanning's money because the contract terms—one year at ten percent—were written on the check itself. Contrary to Iversen's claim, a "demand" is only required where the person liable would not otherwise know of the loss or be uncertain of the extent. *See S.D. Bldg. Auth. v. Geiger–Berger Assoc.*, 414 N.W.2d 15, 22 (S.D.1987). The trial court did not err in awarding Fanning prejudgment interest on this loan.

Similarly, we find the trial court was correct in awarding prejudgment interest on Fanning's $10,000 advance to Iversen for wedding expenses, which she subsequently converted to her own use. It is reasonable to assume that Fanning would want the money back after Iverson terminated their engagement on or around January 1, 1990. The trial court properly used this date as the day of the loss. Nevertheless, we believe the trial court erred in basing its calculations on a fifteen percent interest rate. It is unclear from the record why a fifteen percent rate was used in assessing the interest due. SDCL 21–1–13.1 provides that, unless a contract provides otherwise, prejudgment interest "shall be awarded at the Category B rate specified in § 54–3–16." That percentage is ten percent per year. SDCL 54–3–16(2). We remand for recalculation of interest consistent with this opinion.

## III. Motion for Continuance.

At the beginning of the July 1, 1994, court trial, Iversen made a motion for continuance, alleging the existence of new evidence unobtainable at that time. The evidence was a FHA file which contained financial information on Fanning. Iversen argued this information was necessary to explain

Fanning's intent in transferring money and the real estate to her during the time period in question. When the trial court asked how this evidence was relevant to explain intent, Iversen could not provide an answer. The trial court therefore denied the motion. Iversen argues the trial court erred in denying this motion.

The grant or denial of a motion for continuance of a trial is within the sound discretion of the trial court. *Wasserburger v. Consolidated Management*, 502 N.W.2d 256, 263 (S.D.1993). "A continuance may properly be denied when the party had ample time for preparation or the request for a continuance was not made until the last minute." *Mid-Western Elec. v. DeWild Grant Reckert*, 500 N.W.2d 250 (S.D.1993). Reviewing the record, Iverson could not present any reason whatsoever as to why this evidence was relevant to the case. She had ample time to prepare, yet requested the continuance on the day of trial. Iversen was not prejudiced by the court's denial of this continuance. *Adoption of C.T.E.*, 485 N.W.2d 591, 594 (S.D.1992). The trial court did not abuse its discretion in denying the motion.

*IV. Attorney Fees.*

■ Iversen alleges the trial court erred in awarding Fanning $350 in attorney fees, but fails to specify in the record why the trial court so ordered. We have held that "the ultimate responsibility for presenting an adequate record on appeal falls upon the appellant." *Baltodano v. North Cent. Health Services*, 508 N.W.2d 892, 894 (S.D.1993). Fanning's brief alleges the reason the trial court ordered Iversen to pay the fees was because Iversen scheduled a hearing, yet failed to appear. This hearing was scheduled for a date after Iversen filed her notice of review.

We have repeatedly stated we will not decide an issue until the trial court has an opportunity to pass upon it. *Fullmer v. State Farm Ins. Co.*, 514 N.W.2d 861, 867 (S.D.1994). Furthermore, Iversen cites no authority to support her position. This issue is waived. *Guthmiller v. South Dakota Dept. of Transp.*, 502 N.W.2d 586 (S.D.1993).

Fanning has also requested this court to award attorney fees on appeal, supported by itemized costs and services performed. *Malcolm v. Malcolm*, 365 N.W.2d 863 (S.D.1985). We decline this request as this is not a divorce proceeding, and the factors considered in awarding same do not warrant such an award in this case. *Senger v. Senger*, 308 N.W.2d 395 (S.D.1981).

Affirmed in part, reversed in part and remanded for entry of judgment consistent with this opinion.

MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.